CLERK'S OFFICE
A TRUE COPY
Jan 18, 2024
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>The Cellular Telephone Assigned Call Number<br>(480) 843-8815 | )<br>)<br>)<br>)<br>)<br>)    Case No.    24    MJ    31 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A. This court has authority to issue this warrant under 18 U.S.C. §§2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1); 846; & 843(b) | Distribution and Possession with Intent to Distribute a Controlled Substance; Conspiracy to Distribute and Possession with the Intent to Distribute Controlled Substances; and Unlawful Use of a Communication Facility. |

The application is based on these facts:

See Attached Affidavit.

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of  180  days *(give exact ending date if more than 30 days:*  07/16/2024  *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Christopher Conway*
*Applicant's signature*

Christopher Conway, USPIS TFO
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date:  01/18/2024

*William E. Duffin*
*Judge's signature*

City and state:  Milwaukee, Wisconsin     Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR SEARCH WARRANT

I, Christopher Conway, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(480) 843-8815** ("**Target Cell Phone**") whose service provider is AT&T Corporation, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, Florida. The **Target Cell Phone** is described herein, and in Attachment A, and the location information to be seized is described herein, and in Attachment B.

2.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3.      I am currently a Task Force Officer assigned to the United States Postal Inspection Service ("USPIS"). I have been employed as a Police Officer since December 2002 with the Milwaukee Police Department.

1

4.     I am currently assigned to the USPIS Milwaukee Office, Multi-function team, as well as being placed on the North Central High Intensity Drug Trafficking Area ("HIDTA") Interdiction Unit.  I have been assigned to North Central HIDTA Interdiction Unit since 2018 as an investigator.  I have also been assigned to numerous other specialty units in the Milwaukee Police Department during my career that involved narcotics investigations.  The USPIS Milwaukee Office investigates United States Postal Service customers involving narcotics, prohibited mailings, controlled substances, and other matters related to the Postal Service.  The Milwaukee office's team has intercepted numerous parcels, which were found to contain narcotics or proceeds of narcotics trafficking and other criminal activity.

5.     The USPIS is the primary investigative arm of the United States Postal Service ("USPS") and is charged under Title 18, United States Code, Section 3061 with the enforcement of laws governing the use and movement of the United States Mail, including, but not limited to, the misuse and fraudulent schemes involving the mail, crimes relating to mail fraud, identity theft, and narcotics trafficking involving the U.S. Mail.

6.     I have participated in numerous complex narcotics investigations that involved violations of state and federal controlled substances laws including Title 21, United States Code, Sections 841(a)(1) and 846 (possession with intent to distribute a controlled substance and conspiracy to possess with intent to distribute a controlled substance), and other related offenses. I have had both formal training and have

2

participated in numerous complex drug trafficking investigations, including ones using wiretaps. More specifically, my training and experience includes the following:

    a. I have used informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

    b. I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

    c. I have participated in several search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

    d. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base, fentanyl, ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

    e. I am familiar with the language used over the telephone to discuss drug trafficking, and I know that the language is often limited, guarded, and coded;

    f. I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

    g. I know that drug traffickers commonly have in their possession, and at their residences and other storage locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

    h. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials;

i. I know large-scale drug traffickers often purchase and/or title their assets in fictitious names, aliases, or the names of relatives, associates, or business entities to avoid detection of these assets by government agencies. I know that even though these assets are in names other than the drug traffickers, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them;

j. I know large-scale drug traffickers maintain on-hand large amounts of U.S. currency to maintain and finance their ongoing drug business;

k. I know large-scale drug traffickers often use electronic equipment such as telephones (land-lines and cell phones), computers, telex machines, facsimile machines, currency counting machines, and telephone answering machines to generate, transfer, count, record and/or store the information described in the items above, as well as conduct drug trafficking activities; and

l. I know when drug traffickers amass large proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers use the following methods, including, but not limited to: domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses that generate large quantities of currency.

7. Based on my training, personal experience, on the job training, and working with other USPIS Postal Inspectors and HIDTA drug task force officers, I know narcotics, drugs, paraphernalia, controlled substances, and moneys associated with the sale of narcotics, drugs, and controlled substances are sent through the USPS system, and I am familiar with many of the methods used by individuals who attempt to use the USPS to illegally distribute controlled substances.

8. This affidavit is based upon my personal knowledge, training, and experience, and on information reported to me by other federal, state, and local law

4

enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon official records, witness statements, recorded statements, and surveillance video, all of which I consider to be reliable as set forth herein.

9. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

10. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my or case agents' knowledge about this matter.

11. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) (Distribution and Possession with Intent to Distribute a Controlled Substance), 843(b) (Unlawful Use of a Communication Facility (including the mails) to Facilitate the Distribution of a Controlled Substance), and 846 (Conspiracy to Distribute and Possession with the Intent to Distribute Controlled Substances) have been committed, are being committed, and/or will be committed by Julian D. RUTHERFORD ("RUTHERFORD") (DOB: xx/xx/1990).

12. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is

a district court of the United States that has jurisdiction over the offenses being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

13.     The United States Postal Inspection Service (USPIS), the Drug Enforcement Administration ("DEA"), and the Milwaukee Police Department ("MPD") are currently investigating a drug trafficking organization using the mail to ship parcels containing Oxycodone Hydrochloride pills, suspected to be counterfeit, fentanyl-laden pills, from Arizona to Wisconsin. Specifically, during the course of this investigation, evidence reflects that Julian D. RUTHERFORD is facilitating the shipment of counterfeit fentanyl pills from the area of Avondale/Tolleson, Arizona to various addresses in Racine and Milwaukee, Wisconsin. During this investigation, case agents have identified a number of parcels that are associated with RUTHERFORD.  Specifically, as of January 17, 2024, case agents have identified approximately 26 parcels sent through USPS since at least June 2023, which parcels are associated with RUTHERFORD. Case agents have linked these parcels to RUTHERFORD through various means, to include law enforcement databases, subpoenas, witness statements, video surveillance footage, and tracking number information.

14.     Based on the investigation to date, law enforcement believes multiple co-conspirators in Racine and Milwaukee County, Wisconsin, are working together to receive USPS parcels containing quantities of suspected fentanyl.

6

**USPS Parcel Seizure of Approximately 545 grams of Suspected Fentanyl**

15.     On December 5, 2023, the Honorable Stephen C. Dries, United States Magistrate Judge, authorized a federal search warrant for the following suspicious parcel: USPS Priority Mail parcel 9505511805463336587729 ("Subject Parcel 16"). *See* 23-M-494. Subject Parcel 16 was approximately 11 ¼" x 8 ¾" x 6" and weighed approximately 2 lbs. 9oz. Subject Parcel 16 bore a handwritten label addressed to an address in Cudahy, Wisconsin. Subject Parcel 16 was postmarked on December 2, 2023, in Avondale, Arizona. Upon executing the search warrant on Subject Parcel 16, case agents discovered approximately 5,000 small blue pills bearing the marking "M30," which pills were wrapped in a large white towel and totaled 545 grams. Using the pill identifier from Drugs.com, the blue M30 pills are consistent with Oxycodone Hydrochloride. However, based on their training and experience, case agents suspect the pills to be counterfeit Oxycodone Hydrochloride pills, and to instead contain fentanyl. The pills have been sent to the laboratory for further testing, and case agents are awaiting results.

**Information Obtained from Cooperating Source 1 ("CS-1")**

16.     On December 5, 2023, case agents conducted a controlled delivery of Subject Parcel 16. An individual at the recipient address took possession of Subject Parcel 16 and later agreed to become a confidential source ("CS-1"). During a meeting with case agents in December 2023, CS-1 acknowledged that CS-1 ordered fentanyl pills from RUTHERFORD, and that the parcel seized on December 5, 2023 (Subject Parcel 16) was sent from RUTHERFORD. CS-1 further stated that CS-1 has obtained fentanyl pills from

RUTHERFORD, who lives in Arizona. Specifically, CS-1 stated that CS-1 has purchased fentanyl pills from RUTHERFORD more than 5 times in the past and usually receives 1,000 to 5,000 pills at a time. According to CS-1, RUTHERFORD sends the narcotics through the mail to Wisconsin. CS-1 stated that CS-1 contacts RUTHERFORD at the **Target Cell Phone** when discussing narcotics transactions.

17.     CS-1 is cooperating with law enforcement in exchange for consideration in relation to CS-1's criminal liability for involvement in the controlled delivery of fentanyl on December 5, 2023. CS-1 has not been paid money in exchange for CS-1's cooperation with law enforcement. Thus far, the information provided by CS-1 has proven to be reliable and has been corroborated by, among other things, surveillance activities, USPS postal records, search warrants, and other information. According to law enforcement databases, CS-1 has criminal convictions for Disorderly Conduct, Battery, Bail Jumping, Credit Card -Fraudulent Use, and Manufacture Deliver THC. Within the context of the information detailed and relied upon for purposes of this affidavit, case agents believe CS-1 is credible and CS-1's information reliable.

18.     In December 2023, case agents met with CS-1 regarding ordering a quantity of narcotics from RUTHERFORD. On December 18, 2023, at the direction and control of case agents, CS-1 placed a recorded phone call to RUTHERFORD at the **Target Cell Phone** regarding a controlled purchase of narcotics. During the call, CS-1 told RUTHERFORD that CS-1 sent the money and RUTHERFORD asked, "What we doing?" CS-1 responded, saying the "Ice and pill side." RUTHERFORD responded, "Alright bet."

8

Based on their training, experience, and familiarity with this investigation, case agents believe that during this call, CS-1 asked RUTHERFORD for fentanyl pills ("pill side") and methamphetamine ("Ice"), and RUTHERFORD agreed to sell methamphetamine and fentanyl pills to CS-1. Thereafter, case agents provided CS-1 with $2,000 to send to RUTHERFORD through a Zelle account. At the direction and control of case agents, the $2,000 was then sent to RUTHERFORD's Zelle account, which account information reflected the title of "Julian" with phone number 1-480-843-8815, the **Target Cell Phone**.

19.     On December 26, 2023, in response to the controlled payment of $2,000 to RUTHERFORD, CS-1 provided case agents with a tracking number for a USPS Express Mail parcel that was sent by RUTHERFORD to CS-1 via text message from the **Target Cell Phone**. The tracking number was identified as EI468483727US and associated to a parcel that will be referred to as Subject Parcel 19. Subject Parcel 19 was approximately 11 ¼" x 8 ¾" x 6" and weighed approximately 1 lb. 8 oz. Subject Parcel 19 bore a handwritten label addressed to an address in Cudahy, Wisconsin. Subject Parcel 19 was postmarked on December 26, 2023, in Avondale, Arizona. The postage paid was $56.80.

20.     On December 27, 2023, a case agent was conducting parcel screenings at the Milwaukee Processing and Distribution Center, located at 345 W. Saint Paul Avenue, Milwaukee, Wisconsin, when Subject Parcel 19 was located. On that same date, Subject Parcel 19 was thereafter seized and searched upon consent of CS-1. Upon searching the parcel, located inside was one plastic bag containing round light blue pills, suspected to be fentanyl pills. The pills were secreted in dryer sheets, plastic wrap, and a towel. The

9

pills had an imprint of "M" on one side and "30" on the other side, with a gross weight of approximately 103 grams. Using the pill identifier from Drugs.com, the blue M30 pills are consistent with Oxycodone Hydrochloride. However, based on their training and experience, case agents suspect the pills to be counterfeit Oxycodone Hydrochloride pills, and to instead contain fentanyl. The pills have been sent to the laboratory for further testing, and case agents are awaiting results.

21.     CS-1 was shown a WI Department of Community Corrections Booking photograph of RUTHERFORD and CS-1 confirmed the photograph was RUTHERFORD.

**USPS Parcel Seizure of Approximately 160 grams of suspected Fentanyl**

22.     On January 5, 2024, I was conducting parcel screening at the Milwaukee Processing and Distribution Center Post Office, located at 345 W. St. Paul Ave Milwaukee, Wisconsin, when a USPS Priority Mail Express parcel bearing tracking number EI468483381US, Subject Parcel 20, was found to be suspicious.  Subject Parcel 20 was approximately 11 ¼"x 8 ¾" x 6" and weighed approximately 1 lbs. 11 oz. The shipping label for the Subject Parcel indicated it was from Lush and Lavish LLC, located at 202 W. Hermosa P203, Tempe, Arizona, 85282. Subject Parcel 20 bore a handwritten label addressed to Racine Frenchies LLC, 1020 Jackson Pl., Mount Pleasant, Wisconsin, 53406. Subject Parcel 20 was postmarked on January 4, 2024, in Avondale, Arizona. The postage paid was $56.80.

23.     On January 8, 2024, the Honorable William E. Duffin, United States Magistrate Judge, authorized a search warrant for Subject Parcel 20. On this same date,

10

case agents searched Subject Parcel 20. Upon opening the parcel, it contained 2 clear plastic bags filled with numerous blue M30 pills, suspected to be fentanyl pills, wrapped in a large black towel, and weighing a total of 160 grams. Using the pill identifier from Drugs.com, the blue M30 pills are consistent with Oxycodone Hydrochloride. However, based on their training and experience, case agents suspect the pills to be counterfeit Oxycodone Hydrochloride pills, and to instead contain fentanyl. The pills have been sent to the laboratory for further testing, and case agents are awaiting results.[1]

24. I know that Arizona USPIS investigators obtained video of the mailing of Subject Parcels 16 and 20, which contained suspected fentanyl pills. In these videos, RUTHERFORD is observed mailing Subject Parcels 16 and 20 at the Avondale Postal Station in Arizona. This information leads case agents to believe that RUTHERFORD is sending narcotics through USPS and using the **Target Cell Phone** to coordinate these narcotic shipments.

25. On January 11, 2024, at the direction and control of case agents, CS-1 communicated with RUTHERFORD over the **Target Cell Phone**, at which time CS-1 ordered $2,000 worth of methamphetamine from RUTHERFORD. Thereafter, $2,000 was

---

[1] Some of the pills from each of Subject Parcels 16, 19, and 20 were subjected to field testing, which testing returned inconclusive for the presence of fentanyl. However, case agents know field testing of counterfeit M30 pills has produced false negative results for the presence of fentanyl. Therefore, the pills from Subject Parcel 16, 19, and 20 contain either Oxycodone Hydrochloride or fentanyl, both Schedule II controlled substances. As noted above, the pills have been sent to the laboratory for further testing.

provided to CS-1, and at the direction and control of case agents, the $2,000 was sent to RUTHERFORD's Zelle account, which account information as described above reflected the title of "Julian" with phone number 1-480-843-8815, the **Target Cell Phone**.

<u>CONCLUSION</u>

26.     On December 28, 2023, case agents subpoenaed records for the **Target Cell Phone**. Results from the subpoena for the **Target Cell Phone** reflect that the subscriber is under the name Julian Rutherford at 11373 Buchanan Street, Avondale, Arizona, with an activation date of April 11, 2023. The account still shows as being active.

27.     Evidence obtained during this investigation leads case agents to believe that RUTHERFORD operates the **Target Cell Phone**. The location data associated with the **Target Cell Phone** will assist case agents in conducting targeted physical surveillance and further identify the locations and individuals associated with and the nature and scope of RUTHERFORD's drug trafficking activities.

28.     Case agents searched law enforcement databases to confirm that **Target Cell Phone** is currently being serviced by AT&T.

29.     Case agents are requesting this warrant authorizing the collection of data related to the **Target Cell Phone** for **30** days to further investigate RUTHERFORD's activities, and to identify locations to which RUTHERFORD is traveling to further his drug distribution trafficking activities.

30.     Based upon my training and experience, I know that individuals involved in drug trafficking use their cellular telephones to contact other drug dealers and drug

purchasers, and that information relating to their telephones may show the areas in which they are trafficking drugs and the individuals who they are contacting to sell or distribute the drugs. Based upon the facts in this affidavit, there is probable cause to believe that RUTHERFORD is engaged in the trafficking and distribution of controlled substances and is using the **Target Cell Phone** while engaged in these crimes. I further submit that probable cause exists to believe that obtaining the location information of the **Target Cell Phone** will assist case agents in determining RUTHERFORD's criminal activities, to include his residence, meeting locations, co-conspirators, and sources of supply.

31.     In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

13

Accordingly, cell-site data provides an approximate general location of the cellular device.

## Cell-Site Data

32.     Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the **Target Cell Phone**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication.   I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

33.     I further know that some service providers can collect timing advance or engineering data commonly referred to as per call measurement data (PCMD), RTT, True Call, Advance Timing, WebMap, or equivalent. Per-call measurement data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

14

## E-911 Phase II / GPS Location Data

34.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the **Target Cell Phone**, including by initiating a signal to determine the location of the **Target Cell Phone** on the Service Provider's network or with such other reference points as may be reasonably available.

35.     I know that AT&T Corporation can provide historical precision GPS location information, historical handset location data, and handset triangulation data, also known as Network Event Location System (NELOS) data. NELOS data may provide location data based upon the handset itself.

15

## Subscriber Information

36.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **Target Cell Phone**'s user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

37.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

38.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

39.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish

16

the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **Target Cell Phone** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

40.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until **180 days** after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Cell Phone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is

17

reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C.
§ 3103a(b)(2).

41.     Because the warrant will be served on the Service Provider, who will then
compile the requested records at a time convenient to it, reasonable cause exists to permit
the execution of the requested warrant at any time in the day or night.

18

## ATTACHMENT A

### Property to Be Searched

1.      Records and information associated with the cellular device assigned call number **(480) 843-8815** (referred to herein and in Attachment B as "The Target Cell Phone"), that is in the custody or control of AT&T Corporation (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 11760 U.S. Highway 1, North Palm Beach, Florida.

2.      The Target Cell Phone.

1

**ATTACHMENT B**

**Particular Things to be Seized**

I.      **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.      The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period September 1, 2023, to the present:

     i.      Names (including subscriber names, usernames, and screen names);

     ii.      Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

     iii.      Local and long-distance telephone connection records;

     iv.      Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

     v.      Length of service (including start date) and types of service utilized;

     vi.      Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

1

vii.      Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii.     Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix.      All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone for the time period September 1, 2023, to the present including:

        a.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

        b.  information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

b.    Information associated with each communication to and from the Target Cell Phone for a period of **30** days from the date of this warrant, including:

i.      Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii.     Source and destination telephone numbers;

iii.    Date, time, and duration of communication; and

iv.    All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

c.     Information about the location of the Target Cell Phone for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, RTT data, GPS data, latitude-longitude data, and other precise location information.

     i.     To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

     ii.     This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846, involving **Julian D. RUTHERFORD** and others known and unknown from the period of September l, 2023 through the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

3

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by AT&T, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of AT&T. The attached records consist of _____.

I further state that:

a. All records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of AT&T and they were made by AT&T as a regular practice; and

b. Such records were generated by AT&T's electronic process or system that produces an accurate result, to wit:

1. The records were copied from electronic device(s), storage medium(s), or file(s) in the custody of AT&T in a manner to ensure that they are true duplicates of the original records; and

1

2.      The process or system is regularly verified by AT&T and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

| _____ | _____ |
| Date | Signature |

2

☐ Original      ☐ Du[

CLERK'S OFFICE
A TRUE COPY
Jan 18, 2024
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )    Case No.    24    MJ    31 |
| The Cellular Telephone Assigned Call Number | ) |
| (480) 843-8815 | ) |
| | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____

*(identify the person or describe the property to be searched and give its location)*:

See Attachment A. This court has authority to issue this warrant under 18 U.S.C. §§2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____02/01/2024_____ *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. William E. Duffin_____.

*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*    ☑ until, the facts justifying, the later specific date of _____07/16/2024_____.

Date and time issued: _____01/18/2024 at 1:45 p.m._____     *William E. Duffin*

*Judge's signature*

City and state:   Milwaukee, Wisconsin     Honorable William E. Duffin, U.S. Magistrate Judge

*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1. Records and information associated with the cellular device assigned call number **(480) 843-8815** (referred to herein and in Attachment B as "The Target Cell Phone"), that is in the custody or control of AT&T Corporation (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 11760 U.S. Highway 1, North Palm Beach, Florida.

2. The Target Cell Phone.

1

**ATTACHMENT B**

**Particular Things to be Seized**

## I.   Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.   The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period September 1, 2023, to the present:

   i.   Names (including subscriber names, usernames, and screen names);

   ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.   Local and long-distance telephone connection records;

   iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.   Length of service (including start date) and types of service utilized;

   vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital

2

Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

   viii.    Means and source of payment for such service (including any credit card or bank account number) and billing records; and

    ix.    All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone for the time period September 1, 2023, to the present including:

        a.   the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

        b.   information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

  b.    Information associated with each communication to and from the Target Cell Phone for a period of **30** days from the date of this warrant, including:

     i.    Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

     ii.    Source and destination telephone numbers;

    iii.    Date, time, and duration of communication; and

    iv.    All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each

3

communication, as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

c.      Information about the location of the Target Cell Phone for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, RTT data, GPS data, latitude-longitude data, and other precise location information.

      i.      To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

      ii.      This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846, involving **Julian D. RUTHERFORD** and others known and unknown from the period of September l, 2023 through the present.

4

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

5